IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

INGURAN, LLC, d/b/a STGENETICS
and
CYTONOME/ST, LLC,

Plaintiffs,

v.

ABS GLOBAL, INC.
and
GENUS PLC

Defendants.

AMENDED
OPINION AND ORDER

20-cv-349-wmc

In what is now a fourth, significant lawsuit since 2014 between essentially the same parties in this court, plaintiffs Inguran, LLC d/b/a STGenetics and Cytonome/ST, LLC (collectively "ST") filed this patent infringement suit against its competitors in the business of sexed bovine semen processing services, defendants ABS Global, Inc. and Genus, PLC (collectively "ABS"). ABS's response included counterclaims. (*See* dkt. #122, at 71–79 (¶¶ 284–329).) ABS argues in its first and second counterclaims that ST's previous infringement claims against it in earlier lawsuits amounted to sham litigation in violation of the Sherman Act. ABS also maintains in its third and fourth counterclaims that ST's claims of infringement in this case further violate federal antitrust law because the patents in issue were obtained by fraud and asserted in bad faith. Finally, ABS argues in its fifth counterclaim that ST's litigation violates Wisconsin unfair competition law. ST has moved to dismiss all of these counterclaims. (Dkt. #146.) For the reasons discussed below, this court will grant in part as to ABS's first, second and fifth counterclaims and deny in part as to ABS's third and fourth counterclaims.

PROCEDURAL HISTORY

The parties' extensive litigation history has been addressed in detail previously, *Inguran, LLC v. ABS Glob., Inc.*, No. 20-cv-085-wmc, 2021 WL 5998524, at *1 (W.D. Wis. Dec. 20, 2021) ("*ABS III*"), but is briefly summarized here for context. Greater detail can be found in the court's opinions in those earlier cases and related appeals.

A. *ABS I*

In 2014, ABS originally filed an antitrust complaint against ST in *ABS Global, Inc. v. Inguran, LLC*, No. 14-cv-503 (W.D. Wis.) ("*ABS I*"), to which ST counterclaimed for patent infringement and misappropriation of trade secrets. That case went to trial in 2016, after which a jury found that ST willfully maintained its monopoly power in the relevant market for sexed bovine semen processing services, but also found ABS suffered no antitrust injury. *Id.* (dkt. #696). As a result, this court entered a 5-year injunction, commencing on April 24, 2017, in ABS's favor that enjoined ST from enforcing anticompetitive agreements it formed with ABS and other bull studs, including the agreement in 2012 that restricted ABS from developing a competing sexed semen sorting technology. *Id.* (dkt. #870 at 4–5). The jury further found ABS liable for patent infringement of U.S. Patent Nos. 8,206,987 (the '987 patent) and 8,198,092 (the '092 patent), as well as for misappropriation of ST's protected trade secrets. *Id.* (dkt. #697). Finally, the jury awarded ST a lump sum for past infringement and a per straw royalty on ABS's future sales of sexed semen straws processed using the '987 and '092 patents, as well as monetary damages for misappropriation of ST's trade secrets. *Id.* (dkt. #700).

## B.  *ABS II*

ST next filed a patent infringement suit against ABS alleging infringement of seven U.S. patents for use of microfluidic chip technology in the production of sexed semen straws.  *Inguran, LLC v. ABS Glob., Inc.*, No. 17-cv-446 (W.D. Wis.) ("*ABS II*").  Of these seven patents, the jury found ABS infringed two of them, U.S. Patent Nos. 7,311,476 (the '476 patent) and 7,611,309 (the '309 patent), *id.* (dkt. #524), for which ST was again awarded damages and an ongoing royalty, *id.* (dkt. #613).  Following the Federal Circuit's remand for a limited retrial on the validity of the asserted claims of the '987 patent, the claims in *ABS II* were consolidated with *ABS I*, and the '987 claims were found to be valid, along with the asserted claims in the '476 and '309 patents.  *See ABS I*, dkt. #1212 (June 8, 2020) (final judgment); *ABS II*, dkt. #613.

## C.  *ABS III*

Among other allegedly infringing conduct, ST later learned that ABS was licensing the technology covered by ST's '987 patent to third parties.  On January 29, 2020, therefore, ST filed *ABS III*.  The counts of infringement alleged in *ABS III* are summarized as follows.  Count I alleges ABS induced additional infringement of the '987 patent under 35 U.S.C. § 271(b) by selling, leasing, licensing or otherwise transferring interests in and rights to use GSS sorting machines to produce sexed semen to domestic third parties.  Count II alleges ABS infringed the '987 patent under 35 U.S.C. § 271(g) by importing straws of sexed semen made using the GSS system extraterritorially and selling and offering to sell those imported sexed semen straws in the United States.  Count III alleges that ABS infringed the '987 patent under 35 U.S.C. § 271(a) by making sexed semen for use in *in*

3

*vitro* fertilization ("IVF").  *See ABS III*, dkt. #1 at ¶¶ 25–66 (counts of infringement); *see also ABS IV*, dkt. #122, at 29 (¶ 48), 30–31 (¶¶ 54–56) (summarizing counts of infringement); dkt. #148 at 11, 17 (same).

In *ABS III*, ABS admitted it commercially launched the GSS technology in September 2017, after the jury returned its verdict in *ABS I*, but before the entry of final judgment in *ABS I*.  (Dkt. #122, at 5–6 (¶ 20).)  This court subsequently dismissed the complaint in *ABS III* on grounds that all the infringement claims asserted in *ABS III* were barred by the doctrine of claim preclusion following the entry of final judgment in *ABS I*.  *ABS III*, dkt. #120 at 7.  ST only appealed this court's dismissal of Count I, which the Federal Circuit reversed, finding that ST's induced infringement claims were not precluded by the direct infringement judgment in *ABS I*.  *Inguran, LLC v. ABS Glob., Inc.*, 72 F.4th 1272, 1281 (Fed. Cir. 2023).

### D.  *ABS IV*

The original complaint in this case ("*ABS IV*") asserted that ABS also has infringed U.S. Patent No. 10,583,439 (the '439 patent).  (Dkt. #1.)  The second amended complaint further alleges infringement of U.S. Patent Nos. 10,689,210 (the '210 patent) 11,446,665 (the '665 patent).  (Dkt. #117.)  ABS's answer asserted antitrust counterclaims under the Sherman Act and Wisconsin unfair competition law.  (Dkt. #122, at 71–79 (¶¶ 284–329).)

OPINION

ABS's counterclaims allege that ST's filing of *ABS III* constituted "sham litigation" and violated Section 2 of the Sherman Act, 15 U.S.C. § 2.  Indeed, according to ABS's first

and second counterclaims, ST's infringement claims and preliminary injunction request were objectively baseless.  (Dkt. #122, at 72 (¶ 288), 73–74 (¶ 300).)  Additionally, ABS argues in its third and fourth counterclaims that the procurement of the patents in this case was fraudulent and ST's assertion of them is in bad faith in violation of the Sherman Act under the rules articulated in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), and *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979).  ST seeks dismissal of these counterclaims under Federal Rule of Civil Procedure 12(b)(6), arguing that its litigation activity in *ABS III* was not objectively baseless and was protected by the *Noerr–Pennington* doctrine.[1]

Under the *Noerr–Pennington* doctrine, those who petition the government for redress are immune from antitrust liability.  *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 960 (7th Cir. 2020); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding "the right to petition extends to all departments of the Government," including the right to sue in federal court).  However, this immunity is not absolute.  *U.S. Futures Exch.*, 953 F.3d at 960.

Two exceptions to *Noerr–Pennington* are relevant here.  First, an exception to immunity arises if the antitrust claimant shows that a lawsuit is a mere "sham" to interfere with the business of a competitor.  *Noerr*, 365 U.S. at 144; *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).  Most recently, the Supreme Court articulated what some have described as a two-part definition of "sham" litigation in

---

[1] *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*").[2]   The initial inquiry under *PRE* considers "if challenged litigation is objectively meritless," meaning that no reasonable litigant could realistically expect success on the merits.  *U.S. Futures Exch.*, 953 F.3d at 963, 966.   By contrast, an objectively reasonable lawsuit is one "reasonably calculated to elicit a favorable outcome" on the merits.  *PRE*, 508 U.S. at 60.   If the challenged litigation is found to be objectively meritless, the antitrust plaintiff must also prove the "subjective step" of the *PRE* sham litigation inquiry by examining the litigant's "subjective motivation."  *Future Exch.*, 953 F.3d at 963.   This second part of the inquiry considers "whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor'" by using "the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."  *PRE*, 508 U.S. at 60–61 (quoting *Noerr*, 365 U.S. at 144).

Second, in a patent case, an alternative way to overcome *Noerr–Pennington* immunity is for the antitrust claimant to show patent fraud.  *Nobelpharma*, 141 F.3d at 1068.   To prevail on this exception, the antitrust claimant must show that an asserted patent was obtained from the United States Patent and Trademark Office (USPTO) through knowing and willful fraud within the meaning of *Walker Process*, 382 U.S. at 177, *or* is being asserted in bad faith with knowledge that it is invalid as articulated in *Handgards*, 601 F.2d at 994–96.  *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1311–12 (Fed. Cir. 2016).

---

[2] The Seventh Circuit does not necessarily recognize a "separate rubric" to conduct this sham litigation inquiry independently of initially finding the claims to be objectively baseless, *U.S. Futures Exch.*, 953 F.3d at 964, but does recognize plaintiff's need to prove both "objective" meritlessness and a "subjective" component of the sham analysis.  *Id.* at 963.

At the same time, an antitrust claimant must show "all the other elements necessary to establish a Sherman Act monopolization claim." *Id.* at 1306. Thus, the court turns to whether either exception might apply here.

## A. Counterclaims relating to *ABS III* sham litigation

ABS argues in its First Counterclaim and Second Counterclaim that the *ABS III* lawsuit entails "objectively baseless claims of infringement." (Dkt. #122, at 72 (¶ 288), 73–74 (¶ 300).) This court considers the counts of ST's *ABS III* lawsuit for objective baselessness. *Cf. ABS III*, dkt. #120 at 4–7 (discussing Counts I–III separately for dismissal). Various indicia may be used to determine if a lawsuit is objectively baseless, including: whether the lawsuit is covered by a previously adjudicated suit; whether the litigant receives a legal benefit from its lawsuit; and whether there are indicia of bad faith. *PRE*, 508 U.S. at 60 n.5; *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 364–65 (4th Cir. 2013). The parties dispute whether a reasonable expectation of success on one count in a suit is enough to survive a sham-litigation allegation. ST cites *Content Extraction* for the proposition that a sham-litigation claimant must show that *all* the counts in a lawsuit are objectively baseless. (Dkt. #146, at 12; dkt. #149, at 4–5 (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1350 (Fed. Cir. 2014)).) ABS disagrees and argues that a so-called "all-claims rule would allow a party with a potentially meritorious claim to pepper its complaint with advantageous, yet wholly frivolous claims." (Dkt. #148, at 19 (citing *In re Perry*, 918 F.2d 931, 934–35 (Fed. Cir. 1990)).) ST would seem to have the better of this argument,

but for the sake of completeness, this court will examine each count ST alleged in *ABS III* to determine whether any are objectively baseless.[3]

### 1.  Count I

Count I in ST's *ABS III* complaint alleges induced infringement under 35 U.S.C. § 271(b) by ABS's alleged selling or licensing GSS machines to third parties.  (*ABS III*, dkt. #1 at ¶¶ 25–38.)  In *ABS I*, ST alleged direct infringement of the '987 patent under 35 U.S.C. § 271(a).  ABS asserts in its counterclaims that the holding in *ABS I* barred ST's claims of induced infringement in *ABS III* by claim preclusion.  (Dkt. #122, at 30 (¶¶ 52–53).)  However, as previously explained, the Federal Circuit has since held the judgment in *ABS I* did not preclude ST from bringing an induced patent infringement claim in *ABS III*.  *Inguran*, 72 F.4th at 1281.  Successful litigation "is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *PRE*, 508 U.S. at 60 n.5.  Thus, ST's Count I in *ABS III* was not objectively baseless.

### 2.  Count II

As for Count II in *ABS III*, ST accused ABS of infringing the patented process of the '987 patent under 35 U.S.C. § 271(g).  (*ABS III*, dkt. #1 at ¶¶ 39–53.)   Under subsection (g), it is an act of infringement to import into or to sell or use within the United States any product that is made by a process patented in the United States.  35 U.S.C. § 271(g); *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir. 1996).  Thus, in *ABS III*, ST alleged that ABS's importing straws made outside the United States using

---

[3] Because this court finds that *none* of the three counts in *ABS III* were objectively baseless, this court does not decide if there is an "all-claims rule" as a matter of law.

the GSS technology was infringing conduct uniquely covered under § 271(g). Supporting its claim, ST also alleged that ABS licensed the GSS technology to a Norwegian company that produced sexed semen for import and sale into the United States. *ABS III*, dkt. #1 at ¶¶ 44–45. Although ST admits it alleged direct infringement under 35 U.S.C. § 271(a) in *ABS I*, ST argues it did not explicitly allege infringement under § 271(g) in *ABS I*. (Dkt. #146, at 10.)

Nevertheless, ABS argues that Count II was objectively baseless. (Dkt. #122, at 30–31 (¶ 55).) Specifically, given this court's finding that the *ABS I* judgment included straws sold within the United States, regardless of where they were processed, ABS argues that Count II "fails to get off the ground" on the basis of claim preclusion. (*Id.*) However, because this court's judgment in *ABS I* included an ongoing royalty covering "sale or processing" that took place in the United States (*ABS I*, dkt. #1211 at 2; *id.*, dkt. #786, at ¶ 15), this court explained in its *ABS III* dismissal order that the *ABS I* judgment had preclusive effect on ST's § 271(g) theories because the royalties include sales in the United States even if the straws were processed extraterritorially. (*ABS III*, dkt. #120 at 6.)

Even though Count II in *ABS III* was not appealed to the Federal Circuit (dkt. #122 at 31 (¶ 58); dkt. #146, at 14–15), that count is not necessarily, objectively baseless under § 271(g). First, 35 U.S.C. § 271(a) "does not concern processes practiced abroad," *Amgen Inc. v. Int'l Trade Comm'n*, 565 F.3d 846, 851 (Fed. Cir. 2009), and subsection (g) was expressly enacted "to close a perceived loophole" on patented processes practiced overseas. *Eli Lilly*, 82 F.3d at 1571. Given that, ST could have reasonably believed the *ABS I* judgment left that same loophole open in that it did not cover patented processes practiced

overseas, because in *ABS I,* ST did not plead infringement under § 271(g).  Second, the Seventh Circuit has cautioned that too much deference to an issuing court's much-later interpretation of an order "would undermine the ability of parties and non-parties to rely on a court order."  *Grede v. FCStone, LLC,* 746 F.3d 244, 257 (7th Cir. 2014).  Indeed, in part, this is what caused the Federal Circuit to reverse as to Count I in *ABS III*.  As a matter of law, therefore, the court cannot find the claim in Count II of the *ABS III* complaint lacks at least colorable merit.[4]

Of course, ST did not ultimately prevail on or otherwise achieve the legal benefit sought with Count II, but a loss does not render a claim objectively baseless.  This court disagrees with ABS that this case is anything like what *Waugh* cautioned against:  "heads I win, tails you lose."  (*See* dkt. #148, at 17–18 (citing *Waugh,* 728 F.3d at 365–67).)  To the contrary, in *Waugh,* two suits were dismissed as "based in critical part only on conjecture," and plaintiffs otherwise withdrew ten of the fourteen suits "under suspicious circumstances."  728 F.3d at 365.  Thus, the plaintiffs' win-loss percentage was "a one-out-of-fourteen batting average."  *Id.*  Moreover, the *Waugh* court contrasted the claims before it to a few other cases with less-than-perfect success rates by a plaintiff, but which nonetheless were not such poor litigation records that bad faith could be found.  *Id.* (citing *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys. Inc.,* 552 F.3d 1033, 1046–47 (9th Cir.

---

[4] Even if objective baselessness could be argued, there would also appear to be no indicia of bad faith that would indicate Count II in *ABS III* was a sham.  In *Waugh,* on which ABS purports to rely, the bad faith that the court pointed to as probative of an abuse of the adjudicatory process included that the plaintiffs "objectively lacked standing" because they had not attended the public hearing of an administrative body to have standing as an aggrieved party.  728 F.3d at 364–65.  That conduct is wholly unlike the conduct in this litigation.

2009) (no sham litigation where plaintiffs "won seven of the seventeen suits"); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (no sham litigation where fifteen out of twenty-nine suits succeeded); and *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002) (no sham litigation where the court allowed "four of the six asserted patents to proceed beyond summary judgment").)  In the four *ABS* cases before this court, while some of ST's asserted patent claims have been unsuccessful, it has overall been reasonably successful and has not wholly lost *any* of the *ABS I* through *ABS IV* lawsuits, whether on offense or defense, despite being a much smaller player in the overall bull semen market as compared to ABS.[5]  Thus, ST's Count II in *ABS III* was not objectively baseless.

### 3.  Count III

Next, Count III sought damages and injunctive relief for ABS's use of the GSS system to produce sexed semen doses in IVF.  *ABS III*, dkt. #1 at ¶¶ 54–66.  Specifically, ST emphasizes that in *ABS I*, the focus was on straws made by ABS, not doses for use in IVF procedures, or the resulting sexed embryos, and argues that it, therefore, had a reasonable basis for believing ABS's use of the GSS system for IVF was a new act of infringement not litigated in *ABS I*.  (Dkt. #146, at 17.)

---

[5] As the court has pointed out previously, this latter point is important to keep in mind as context with respect to ABS's antitrust and unfair competition claims, since it was ABS who originally brought suit for abuse by ST in exercising monopoly power in the sexed semen bull processing market, which in substantial part, the jury found was due to practicing its own patented inventions and defending against infringement of those patents.  Indeed, this is no doubt why the *ABS I* jury awarded *no* monetary damages for ST's antitrust violations.  *ABS I*, (dkt. #696).

While this court in *ABS III* found that the *ABS I* judgment implicating sexed semen straws precluded future claims for straws used in IVF, this court arguably overstepped by citing to and relying on a trial transcript of the testimony of ST's damage expert, Todd Schoettelkotte, who discussed "ABS's engagement in 'procedures for using the semen for IVF.'" *ABS III*, dkt. #120 at 7 (citing *ABS I*, dkt. #718 at 95).   In reality, Schoettelkotte did not specifically mention IVF to the jury, and the cited testimony was of ABS's employee, Jeff Betthauser.  *ABS I*, dkt. #718 at 93:16–95:10.   Instead of correcting this mischaracterization of the record, however, ABS purports to *rely on* it.  (Dkt. #122, at 31 (¶ 56) (arguing Count III was baseless because "[ST's] damages expert . . . specifically testif[ied] to the jury that [IVF] use was a factor increasing that royalty rate." (first alteration in original) (citing *ABS III*, dkt. #120 at 7)).)   Although Count III was not appealed to the Federal Circuit, the Federal Circuit did admonish the court and ABS against unpredictably broadening the scope of the *ABS I* judgment.  *Inguran*, 72 F.4th at 1281 (citing *Grede*, 746 F.3d at 257).   Regardless, this court is in no position to find Count III in *ABS III* to be objectively baseless.[6]

For these reasons, this court concludes that none of the three counts of infringement pursued in *ABS III* were objectively baseless.  Accordingly, this court need not address the subjective motivation prong of the sham litigation analysis.  *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. LTD.*, 59 F.4th 1328, 1337 (Fed. Cir. 2023); *see also GlobalTap LLC*

---

[6] ABS also argues that ST seeking a preliminary injunction in *ABS III* was objectively baseless. (Dkt. #122, at 72 (¶ 288), 73–74 (¶ 300).)  This argument collapses in view of this court finding as to the at least possible merit of ST's Counts I through III.  Just as ST's infringement counts were not objectively baseless, nor was it seeking a preliminary injunction based in part on the merits of these counts.

*v. Smart Tap LLC*, No. 13 C 5322, 2015 WL 791256, at *6 n.8 (N.D. Ill. Feb. 24, 2015) ("The court's conclusion that the litigation is not objectively baseless precludes an in-depth analysis of [plaintiff's] subjective motivations . . . .").[7]

### B. Antitrust allegations based on patent fraud

#### 1. Patent fraud

ABS's third and fourth counterclaims in this case allege patent fraud.  In particular, ABS asserts a *Walker Process* counterclaim alleging that ST procured the '439, '210, and '665 patents through "knowing and willful fraud" on the USPTO.  (*See* dkt. #122, at 75 (¶ 307).)  As previously noted, ABS also asserts a *Handgards* counterclaim that ST enforced the '439, '210, and '665 patents in "bad faith," while "knowing" that one or more of the patents was "invalid or unenforceable."  (*See* dkt. #122, at 76 (¶ 315).)

First, the Federal Circuit has explained that a *Walker Process* counterclaim requires proof of the elements of common law fraud before the USPTO.  *Nobelpharma*, 141 F.3d at 1069.  Thus, that court defined "fraud" as:

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

---

[7] Alternatively, ABS suggests that ST's "pattern" of litigation may be an exception to find sham litigation without *PRE*'s two-step inquiry.  (Dkt. #148, at 22–23 & n.2.)  To the contrary, both Seventh and Federal Circuits after *PRE* require a finding of objective baselessness to establish sham litigation and prohibit considering the subjective motivations of the patentee without such a finding.  *See U.S. Futures Exch.*, 953 F.3d at 964; *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 n.3 (7th Cir. 2011); *SSI*, 59 F.4th at 1337.  ABS's first and second counterclaims, therefore, fail to allege the *PRE* sham litigation exception to the *Noerr–Pennington* doctrine.

*Id.* at 1069–70.  Even conduct before the USPTO that may render a patent unenforceable is a lesser offense than common law fraud.  *Id.* at 1069.  In *Nobelpharma*, the Federal Circuit upheld the district court's judgment that a patent was fraudulently obtained under *Walker Process* and invalid under 35 U.S.C. § 112 for failure to disclose the best mode of practicing the invention.  141 F.3d at 1066.

Second, *Handgards* provides a separate but related formulation of patent fraud that may strip a patentee of its *Noerr–Pennington* immunity.  More specifically, *Handgards* focus is on "bad faith enforcement of a patent known to be invalid," while *Walker Process* concerns "enforcement of a patent known to have been procured by fraud."  *See Korody-Colyer Corp. v. Gen. Motors Corp.*, 828 F.2d 1572, 1573 n.1 (Fed. Cir. 1987); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364–65 (Fed. Cir. 1998).  Thus, *Handgards* "operationalizes dicta" in, as well as "built upon," *Walker Process*.  Christopher R. Leslie, *The Anticompetitive Effects of Unenforced Invalid Patents*, 91 Minn. L. Rev. 101, 111 & n.34 (2006).  The Federal Circuit does this by recognizing "that regardless of how a monopolist acquires an invalid patent, if it knows of that patent's invalidity and still enforces the patent to eliminate competitors, a Section Two violation may lie."  *Id.*; *Korody-Colyer*, 828 F.2d at 1573 n.1; *C.R. Bard*, 157 F.3d at 1364–65.  In particular, district courts in the Seventh Circuit have recognized both *Walker Process* and *Handgards* exceptions to *Noerr–Pennington*, allowing suit under the Sherman Act.  *E.g.*, *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 898–900 (N.D. Ill. 2009).

Here, ABS alleges that for the application that ultimately issued as the '439 patent, ST disclosed a purported invention relating to hydrodynamic focusing in a microfluidic

device—more specifically, systems and methods for producing a sheath flow in a flow channel.  (Dkt. #122, at 36 (¶¶ 75–81).)  Three times, the patent examiner rejected claim 1 and other claims in ST's application for the '439 patent as obvious under pre-AIA 35 U.S.C. § 103(a) due to a Gilbert prior art reference combined with other prior art references.  (Dkt. #122, at 38–45 (¶¶ 90–115).)  However, the examiner allowed the claims after ST asserted that Gilbert did not disclose the '439 patent's invention and emphasized that the new claims involved a microfluidic assembly whose flow channel shifted vertically upward, while the Gilbert application did not.  (*See id.*, at 45–48 (¶¶ 121–30).)

By contrast, ABS alleges for the application that ultimately issued as the '210 patent, ST claimed the benefit of the Gilbert application despite previously distinguishing it during the prosecution of the '439 patent.  (*Id.*, at 51 (¶¶ 148–50).)  Further, again contrary to what ST argued during the '439 patent prosecution, ABS asserts ST represented to the USPTO during the '210 patent prosecution that Gilbert *did* teach flow channels that shifted vertically upward.  (*See id.*, at 52 (¶¶ 154–57).)  Moreover, ABS alleges that during the prosecution of the '665 patent, ST essentially reverted back to the same argument for distinguishing the Gilbert application as it did in the '439 patent prosecution—that the new claims involved a microfluidic assembly whose flow channel shifted vertically upward, neither of which were disclosed by Gilbert.  (*Id.*, at 58–60 (¶¶ 197–207).)

As such, ABS plausibly alleges that ST made directly contradictory, material representations to the USPTO regarding the Gilbert prior art depending upon which version was most likely to allow that individual patent application to proceed and obtain

15

the asserted patent.  At the motion to dismiss stage, ST does not dispute the merits of ABS's allegations of fraud at the USPTO, nor could it.[8]  Similarly, ST does not rebut ABS's assertion that the patents are invalid in view of the disclosures in the Gilbert application combined with other prior art references.

When resolving a Federal Rule of Civil Procedure 12(b)(6) motion, courts must "accept the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).  Thus, this court's decision on this motion to dismiss does *not* find that ST fraudulently obtained the patents at issue, nor that the asserted patents are invalid.  Far from it.  Nonetheless, ABS has stated a *plausible claim for relief* under the first step of *Walker Process* based on ST's use of fraudulent statements to the USPTO for purposes of the appeal of ST's patent applications.  Similarly, under the first step of *Handgards*, ABS has made sufficient factual allegations that ST knew one or more of the asserted patents were invalid due to Gilbert, such that its efforts to enforce those patents amounts to bad faith.  Accordingly, ST has failed to show why either of these claims should be dismissed pursuant to 12(b)(6).

### 2.  Traditional antitrust elements

Next, as *Walker Process* explains, upon finding fraudulently obtained patents, it would be "necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved," 382 U.S. at 177, and if exclusionary, it is necessary to consider whether the exclusion satisfies traditional antitrust injury.

---

[8] At most, ST states for the first time, in a conclusory footnote of its reply, that "ST did not procure these patents by fraud."  (Dkt. #149, at 17 n.7.)

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  To do that, the injury must be "to the relevant market," and must "either reduce output or raise prices to consumers," *Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 978 (7th Cir. 2019), since the injury must be to *competition*, not merely economic loss to a competitor like ABS. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 345 n.7 (7th Cir. 2022).

Here, ABS asserts that the relevant antitrust market is "The United States market for sexed bovine semen processing services."  (Dkt. #122, at 22 (¶ 8).)  ABS further argues that the assertion of the patents in suit was and is exclusionary because ST has monopoly power in that market, and "the chip design ST seeks to exclude is the one ABS uses in its commercial operation."  (Dkt. #148, at 27.)  In response, ST argues that ABS has not adequately alleged how the *specific* patents in *ABS IV* ('439, '210, and '665) could successfully exclude ABS "any more than the '092 and '987 patents," which ST maintains "have not excluded ABS despite its infringement of them."  (Dkt. #146 at 21; *see also* dkt. #149, at 16 (making same argument about the *ABS II* patents).)

Certainly, suing on a patent in bad faith because it was wrongfully obtained *is* "'exclusionary' in the [Sherman Act] § 2 sense."  3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 705e, at 282 & n.45, ¶ 706a, at 292 (5th ed. 2022).  Before turning to ST's comparison to these previously asserted patents, the Federal Circuit has reversed the dismissal of ST's induced infringement count for the '987 patent, so any exclusion of ABS from the relevant market as to the '987 patent is still very much a live

issue.[9]  Even assuming that ABS is not "excluded" as the result of ST's other, previously asserted patents, it is only because ABS was adjudged to be an infringer in those cases, and the court entered a running royalty for ABS to pay for ongoing use.  Finally, for the new patents at issue here, while ABS alleges sufficient facts to support a finding that these patents are invalid, the validity of ST's infringement claims or right to a royalty remain to be decided.

Even if an actionable, exclusionary act were adequately alleged, ABS also has to allege facts showing a traditional antitrust injury.  *Dairy Foods Inc. v. Dairy Maid Prods. Coop.*, 297 F.2d 805, 808 (7th Cir. 1961) (finding an antitrust injury where defendant "was allegedly compelled either to cease production with consequent loss of sales of the product, pay tribute with consequent increase in production cost, or incur the financial burden of expenses incident to the defense of litigation").  Certainly, if inappropriately obtained, assertions of infringement of an invalid patent is an "unwarranted exclusion." Areeda & Hovenkamp ¶ 705a, at 273.  Moreover, facts established and issue claims precluded from being revisited in this case certainly have the makings to support an antitrust claim since ST and ABS are undisputedly major competitors in the sexed bovine semen processing services market.  Indeed, a jury has previously found ST to be a past monopolist.  (*ABS I*, dkt. #696.)  Further, preventing ABS from certain practices offered

---

[9] Obviously, because the Federal Circuit reversed this court's *ABS III* dismissal as to Count I, ST can no longer rely on its argument that any exclusion is neutralized by "ABS's success in dismissing *ABS III* as quickly as it was able to do so."  (*See* dkt. #146, at 17–18 & n. 7.)  The court is still awaiting the return of the actual mandate in *ABS III* from the Federal Circuit, so the remaining issues to address in light of that reversal may be somewhat premature, but based on the court's written opinion, it seems it will be remanded for consideration of the merits of ST's induced infringement count.  *Inguran*, 72 F.4th at 1281.

in the patented technologies that are part of GSS and IVF products or requiring the payment of royalties would plausibly increase prices for consumers. *Chi. Studio*, 940 F.3d at 978. Finally, attorney fees attributable to defending bad-faith patent assertions are a separate antitrust injury. *TransWeb*, 812 F.3d at 1311–12; *Handgards*, 601 F.2d at 997 ("In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong."). Therefore, this court finds ABS has satisfied the second steps for both *Walker Process* and *Handgards* claims, meaning its third and fourth counterclaims raise plausible claims for which relief may be granted and counterclaims III and IV survive ST's 12(b)(6) motion.

### C.  Wisconsin state law unfair competition claim

In its fifth counterclaim, ABS alleges ST's "exclusionary conduct" violates unfair competition common law of the State of Wisconsin. (Dkt. #122, at 77–78 (¶ 324).) ST argues that ABS's state law claims rise or fall with its federal antitrust claims. (*See* dkt. #146, at 23–24.) ABS disagrees and states that "a federal antitrust violation is sufficient— but not necessary" for its state law unfair competition claims because its Wisconsin common law tort claim is "much broader" than the federal antitrust laws. (*See* dkt. #148, at 31.) Although that may be true, this court finds ABS has failed to sufficiently state a separate claim under Wisconsin unfair competition law or cite any Wisconsin state or controlling federal authority.

In particular, the Federal Circuit has indicated that to assert a state law tort claim that is not preempted by federal patent or antitrust law for "wrongful conduct by asserting

claims of patent infringement," the claimant must show objective baselessness as articulated in *PRE*.  *SSI*, 59 F.4th at 1337; *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (holding the objective baselessness standard of *PRE* applies to state law claims based on communications alleging patent infringement). While ABS's third counterclaim (*Walker Process*) and fourth counterclaim (*Handgards*) remain in the case, ABS has failed to discuss if or how these exceptions to *Noerr–Pennington* are justiciable under Wisconsin unfair competition law.  Moreover, without any authority recognizing such a claim under Wisconsin law, this court is hesitant to find *Walker Process* or *Handgards* violations are sufficient to support a separate, state common law tort claim for unfair competition.

In addition, this court has found ST's counts in *ABS III* were not objectively baseless and accordingly will dismiss ABS's first and second counterclaims.  It would follow, with ABS's theory on objective baselessness rejected and these two federal antitrust counterclaims dismissed, that ABS's state law unfair competition counterclaim would at least need to be narrowed.  Instead, it is unclear what effect this court's dismissal of ABS's *PRE* counterclaims has on ABS's state law claim because ABS did not adequately plead facts or cite case law to suggest the basis for this claim.  Thus, all of ABS's federal antitrust claims have either been dismissed from the case, or have not been shown to be sufficient to state a Wisconsin common law unfair competition claim as currently pleaded.  Critically, ABS also alleges no other specific facts or cites Wisconsin law to show that ST's conduct violates Wisconsin unfair competition law.  Accordingly, this court agrees with ST that ABS has left this court to "guess" at what ABS's state common law claim is being asserted.

(*See* dkt. #149, at 19.)  As such, this court dismisses ABS's fifth counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted without prejudice to repleading within 30 days.

## ORDER

IT IS ORDERED that:

1) ST's motion to dismiss (dkt. #146) is GRANTED IN PART in that ABS's first and second counterclaims (dkt. #122, at 71–74 (¶¶ 284–305)) are DISMISSED WITH PREJUDICE and the fifth counterclaim (*id.* at 77-79 (¶¶ 322–329)) is DISMISSED WITHOUT PREJUDICE.

2) ST's motion to dismiss (dkt. #146) is DENIED IN PART as to ABS's third and fourth counterclaims.

3) Within five days of receipt of the Federal Circuit's mandate remanding the induced infringement count of *ABS III,* the parties are directed to file with this court their position on consolidating *ABS III* and *IV* for all further proceedings.

Entered this 14th day of August, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

21